IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT B. FISHBACK,

        Plaintiff,

vs.                                     No. CIV 12-0533 JB

HSBC RETAIL SERVICES INC. d/b/a
HSBC FURNITURE ROW; EQUIFAX
INFORMATION SERVICES LLC;
EXPERIAN INFORMATION SOLUTIONS
INC.; and TRANS UNION LLC,

        Defendants.

## MEMORANDUM OPINION[1]

**THIS MATTER** comes before the Court on Defendant Trans Union, LLC's Motion to Dismiss Injunctive Relief and Treble Damages Claims, filed June 11, 2012 (Doc. 16)("Motion to Dismiss"). The Court held a hearing on September 21, 2012. The primary issues are: (i) whether the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA") preempts Plaintiff Robert B. Fishback's claims for declaratory and injunctive relief under the New Mexico Unfair Practices Act, NMSA §§ 57-12-1-57-12-26 ("UPA"); and (ii) whether the FCRA preempts Fishback's claims for treble damages under the UPA. The Court concludes that the FCRA does not preempt Fishback's claims for declaratory and injunctive relief, or for treble damages, under the UPA.

---

[1] On March 29, 2013, the Court issued an Order in which it denied the Motion to Dismiss, stating: "The Court will . . . at a later date issue an opinion more fully detailing its rationale for this decision." at 1 n.1 Doc. 56. This Memorandum Opinion is the promised opinion supporting the order denying the Motion to Dismiss.

## FACTUAL BACKGROUND

This case arises out of Fishback's allegation that his credit reports falsely indicate that he is jointly liable for a credit account with Defendant HSBC Retail Services Inc. d/b/a HSBC Furniture Row ("Furniture Row") that is being reported by Defendant Credit Reporting Agencies ("CRAs") Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC ("Trans Union").   Fishback filed his Complaint for Damages, Declaratory, and Injunctive Relief and Demand for a Jury Trial on May 17, 2012 (Doc. 1)("Complaint").

On January 24, 2006, Fishback accompanied his friend, Cristy Peet, to Furniture Row in Las Cruces, New Mexico where Peet intended to purchase furniture.  See Complaint ¶ 9, at 3. Fishback informed Peet and a Furniture Row Employee that he would agree to co-sign on a Furniture Row account with Peet for a purchase of a dining room table and chairs, but that he did not want to be jointly responsible with her on an open charge Furniture Row account.  See Complaint ¶ 10, at 3.

On the application for the Furniture Row account, Fishback's name, address, and telephone number are provided in the section labeled "Joint Applicant."  Furniture Row Express Money Card Program Application at 1, filed June 25, 2012 (Doc. 22-1)("Application").  Directly below the Joint Applicant section is a section that gives the option of enrolling in a monthly debt cancellation program.  Application, at 1.  Peet's signature appears in this section on the line above "SIGN HERE TO ENROLL."  Application, at 1.  Fishback signed the space next to Peet's signature in the optional enrollment section below the statement "NO, I do not wish to enroll at this time" on the line above "SIGN HERE TO DECLINE."  Application, at 1.  Fishback's signature is crossed out and a line with an arrow is drawn to the signature space designated for

"Joint Applicant's Signature."  Application, at 1.  Fishback alleges that someone, without his authority or approval, crossed out his signature and drew the arrow to the joint applicant signature space.  See Complaint ¶ 12, at 3.

Furniture Row then opened a charge Furniture Row account in the names of Peet and Fishback, and began reporting the Furniture Row account to three credit reporting agencies – Defendants Experian Information Solutions, Inc., Equifax Information Services, LLC, and Trans Union -- under both Peet and Fishback's names.  See Complaint ¶¶ 13-14, at 3.  Peet fell behind in her payments on the Furniture Row account, and Furniture Row began reporting the Furniture Row account under the names of both Peet and Fishback as late, and then as charged-off.[2]  See Complaint ¶ 16, at 4.  In July 2010, Fishback discovered that Furniture Row reported to CRAs that he is liable for the Furniture Row account. See Complaint ¶ 18, at 4.

Fishback wrote several letters to Experian Information, Equifax Information, and Trans Union, with copies sent to Furniture Row, in which he stated that he did not intend to be jointly liable on the Furniture Row account and asked them to investigate the matter.  See Complaint ¶¶ 30, 41, 42, 50, 51, 52, at 6-10.  Trans Union sent three responses to Fishback's request for an investigation.  See Complaint ¶¶ 37, 49, 60 at 7-12.  Trans Union first responded to Fishback on May 21, 2011, that it had completed its investigation, and would continue to report the Furniture Row account as belonging to Fishback and charged-off.  See Complaint ¶ 37, at 7.  Fishback's credit report through Trans Union included notations regarding the Furniture Row Account, which stated: "payment after charge off/collection" and "acct info disputed by consumer." Complaint ¶ 37, at 7.  Trans Union's second response dated November 16, 2011, was similar, but

---

[2]  See In re Sears, Roebuck and Co. Securities Litig., 291 F. Supp. 2d 722, 724 n.2 (N.D. Ill. 2003)("A 'charge-off' is a write-off of a delinquent balance as uncollectible.").

Trans Union revised the report notations to read: "Account paid in Full; was a Charge-off" and "Dispute Reslvd - Cust Disagrees."  Complaint ¶ 49, at 9.  In Trans Union's third response to Fishback dated February 24, 2012, Trans Union stated that it verified that the Furniture Row account was accurate and would not reinvestigate, unless Fishback provided it with court papers or an authentic letter from Furniture Row explaining what should be updated.  See Complaint ¶ 60, at 12.

Equifax Information responded to Fishback that, after completing its investigation, it would continue to report the Furniture Row account as charged-off and belonging to Fishback. See Complaint ¶ 39, at 7.  Equifax Information informed Fishback that it would note in its reporting that "Consumer Disputes this Account Information."  Complaint ¶ 39, at 7.  After Fishback's second letter, Equifax Information responded similarly, but stated that it would note in its reporting "Consumer Disputes After Resolution."  Complaint ¶ 50, at 9.  Equifax Information's third response stated that it would note in its reporting "Consumer Disputes This Account Information."  Complaint ¶ 63, at 12.

Experian Information responded to Fishback that it was unable to change its information as Fishback requested, and it would be contacting the furnisher of the disputed information.  See Complaint ¶ 61, at 12.  In Experian Information's second response to Fishback, it informed him that it had completed its investigation and would continue to report the Furniture Row account as Fishback's.  See Complaint ¶ 62, at 12.

Fishback alleges that the CRA's reporting of the charged-off Furniture Row account caused him several injuries: (i) credit denial; (ii) damage to his credit score; (iii) damage to his reputation for creditworthiness; (iv) lost time; (v) out-of-pocket expenses; (vi) emotional

distress; (vii) humiliation and embarrassment; and (viii) aggravation and frustration.  See Complaint ¶ 69, at 13.  Fishback seeks damages and declaratory and injunctive relief.  See Complaint ¶¶ A-F, at 16-17.

## PROCEDURAL BACKROUND

Fishback brings this action against Furniture Row, Equifax Information, Experian Information, and Trans Union.  See Complaint ¶ 1, at 1.  Fishback alleges that the CRAs' reporting of the Furniture Row account on his credit report was improper.  See Complaint ¶ 1, at 1.  Fishback brings four counts against the Defendants.  See Complaint ¶¶ 70-85, at 14-16. Fishback's first count alleges Furniture Row violated the FCRA.  See Complaint ¶¶ 70-73, at 14. The second count alleges the CRAs violated the FCRA.  See Complaint ¶¶ 74-78, at 14-15.  The third count alleges all defendants violated the UPA.  See Complaint ¶¶ 79-83, at 16.  The fourth count alleges that Furniture Row engaged in tortious debt collection practices.  See Complaint ¶¶ 84-85, at 16.

Trans Union moves, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Fishback's Complaint for failure to state any viable cause of action against it.  See Motion to Dismiss, at 1.  Specifically, Trans Union seeks dismissal of Fishback's two counts against it for violations of the FCRA and the UPA.  See Motion to Dismiss at 1.  Trans Union argues that the FCRA does not allow a private plaintiff to seek equitable, declaratory, or injunctive relief.  See Motion to Dismiss at 2.  Trans Union argues that Congress intended that only the Federal Trade Commission ("FTC") would be able to seek injunctive relief under the FCRA.  See Motion to Dismiss at 2.  Trans Union cites Washington v. CSC Credit Servs., Inc., 199 F.3d 263, (5th Cir. 2000); Clark v. Saxon Mortg. Co., No. CV 11-0065, 2011 U.S. Dist.

LEXIS 74052 (M.D. La. July 7, 2011); <u>Stich v. BAC Home Loans Serv., LP</u>, No. 10-CV-01106,

2011 U.S. Dist. LEXIS 37408 (D. Col. March 29, 2011); and <u>Birmingham v. Equifax, Inc.</u>, No.

2:06-CV-00702, 2009 U.S. Dist. LEXIS 5670 (D. Utah Jan. 26, 2009), to support this argument.

<u>See</u> Motion to Dismiss at 2.  Trans Union argues that these cases all support the same proposition

-- that the FCRA preempts private claims for equitable, declaratory and injunctive relief.  <u>See</u>

Motion to Dismiss at 2.  Trans Union asserts that there is no private cause of action for injunctive

relief under 15 U.S.C. § 1681s(a) and, therefore, that the Court should dismiss Fishback's claims

based on Trans Union's alleged noncompliance with the FCRA.  <u>See</u> Motion to Dismiss at 2.

Trans Union contends that, because the FCRA allows only the FTC to seek injunctive relief, any

state statutes to the contrary are inconsistent with the FCRA, and the FCRA preempts private

claims for injunctive relief.  <u>See</u> Motion to Dismiss at 2.

      Trans Union also moves for dismissal of the count for violations of the UPA, on the

ground that the FCRA preempts claims for declaratory and injunctive relief under the UPA.  <u>See</u>

Motion to Dismiss at 3.  Trans Union cites <u>Consumer Data Indus. Ass'n v. King</u>, 678 F.3d 898

(10th Cir. 2012), and <u>Eller v. Trans Union, LLC</u>, No. 09-CIV-0040, 2012 Dist. LEXIS 31629 (D.

Colo. March 9, 2012), to support this argument.  <u>See</u> Motion to Dismiss at 3.  "The FCRA leaves

no room for overlapping state regulations."  Motion to Dismiss at 3 (quoting <u>Consumer Data</u>

<u>Indus. Ass'n v. King</u>, 678 F.3d at 901).  Trans Union contends that the UPA provision allowing

private parties to seek injunctive relief is inconsistent with the FCRA and therefore that the

FCRA preempts the UPA's provision for declaratory or injunctive relief.  <u>See</u> Motion to Dismiss

at 3.

Finally, Trans Union asserts that the FCRA preempts Fishback's claim for treble damages under the UPA, because "the FCRA preempts inconsistent state laws," citing Jarrett v. Bank of Am., 421 F. Supp. 2d 1350, (D. Kan. 2006), and Poulson v. Trans Union, LLC, 370 F. Supp. 2d 592 (E.D. Tex., 2005).  Motion to Dismiss at 4.  Trans Union contends that the district court in Eller v. Trans Union, LLC determined that Congressional intent in creating the FCRA sought not to allow room for additional damage claims under state law.  See Motion to Dismiss at 4.  Trans Union argues that, because the FCRA allows private plaintiffs to seek actual and punitive damages, as well as attorney's fees, an award of treble damages would be inconsistent with Congressional intent expanded in the FCRA and that the FCRA preempts state laws allowing treble damages.  See Motion to Dismiss at 4.

On June 25, 2012, Fishback filed the Plaintiff's Opposition to Trans Union, LLC's Motion to Dismiss Injunctive Relief and Treble Damages Claim.  See Doc. 22 ("Opposition").  Fishback concedes that authority for his claim for injunctive relief is not within the FCRA damages clause, but, rather, asserts that he is entitled to injunctive relief under the UPA.  See Opposition at 8.  Fishback contends that the FCRA does not preempt his state statutory claims under the UPA for injunctive relief and for treble damages, because § 1681h(e) of the FCRA preempts claims based only on defamation, invasion of privacy, or negligence.  See Opposition at 4.

Fishback also argues that, because § 1681n of the FCRA allows claims for punitive damages, § 1681t(a) of the FCRA does not preempt his treble damages claim.  See Opposition at 9.  Fishback contends that the Supreme Court of New Mexico has allowed the multiplication of statutory damages pursuant to statutory authority to be a form of punitive damages.  See

Opposition at 8 (citing Hale v. Basin Motor Co., 110 N.M. 314, 320, 795 P.2d 1006, 1012 (N.M. 1990)).  Fishback argues that Congress grandfathered in state laws in effect on September 30, 1996, through § 1681t(b)(1)(B) of the FCRA.  See Opposition at 9.  Fishback asserts that this clause allows the claims under the UPA to continue, because the New Mexico legislature enacted the UPA in 1967.  See Opposition at 11.  Fishback further argues that Trans Union's cited authority is inapplicable or unpersuasive, because those cases are not on point and do not address whether the FCRA preempts a state law claim expressly granting a right to injunctive relief.  See Opposition at 11.

On July 9, 2012, Trans Union filed Defendant Trans Union, LLC's Reply to Plaintiff's Opposition Motion to Dismiss Injunctive Relief and Treble Damages Claims.  See Doc. 33 ("Reply").  Trans Union continues to assert that Fishback is not entitled to declaratory and injunctive relief under the FCRA, because the FCRA provides injunctive relief only to the FTC.  Reply at 2.  Trans Union also contends that it is not alleging preemption under § 1681h(3) of the FCRA.  See Reply at 3.  Trans Union alleges that § 1681s(a) preempts a private right of action for injunctive relief, because that right would conflict with § 1681s(a), which grants injunctive relief to the FTC.  See Reply at 4.  Trans Union continues to assert, for the reasons stated in the Motion to Dismiss, that the FCRA preempts Fishback's claim for treble damages under the UPA.  See Reply at 5.  Finally, Trans Union contends that § 1681t(b)(1)(B) grandfathers in only any state law in conflict with § 1681i.  See Reply at 6.  Trans Union asserts that § 1681i describes procedures to follow only in disputing the accuracy of credit reports.  See Reply at 6.  Trans Union argues, therefore, that § 1681t(b)(1)(B) is not relevant to the damages sections, §§ 1681n and 1681o.  See Reply at 6.

- 8 -

The Court held a hearing on September 21, 2012.  <u>See</u> Transcript of Hearing (taken Sept. 21, 2012)("Tr.").[3]  At the hearing, Trans Union compartmentalized the Motion to Dismiss into two issues.  <u>See</u> Tr. at 35:10-12 (Sheldon).  Trans Union categorized the first issue before the Court as Fishback's claim for injunctive relief.  <u>See</u> Tr. at 36:14-20 (Sheldon).  The second issue in Trans Union's Motion to Dismiss is Fishback's request for treble damages under the UPA damages clause.  <u>See</u> Tr. at 36:23-24 (Sheldon).

Trans Union asserted that Fishback's claim for injunctive relief is inconsistent with the FCRA and that, therefore, the FCRA's clause preempts the request for injunctive relief.  <u>See</u> Tr. at 37:8-14 (Sheldon).  Trans Union argued that, under the FCRA, the only relief available to a private plaintiff against a CRA is articulated in §§ 1681n and in 1681o, which do not grant private plaintiffs injunctive relief.  <u>See</u> Tr. at 37:15-24 (Sheldon).  Trans Union asserted that the FCRA gives injunctive relief to the FTC alone.  <u>See</u> Tr. at 37:24-25 (Sheldon).  Trans Union further contended that allowing a private plaintiff injunctive relief would be inconsistent with holdings from the cases which Trans Union cites.  <u>See</u> Tr. at 38:3-24 (Sheldon)(citing <u>Washington v. CSC Credit Servs., Inc.</u>; <u>Clark v. Saxon Mortg. Co.</u>; <u>Stich v. BAC Home Loans Serv., LP</u>; <u>Birmingham v. Equifax, Inc.</u>).

Fishback agreed that he withdrew his claim for injunctive relief under the FCRA.  <u>See</u> Tr. at 41:2-6.  Trans Union asserted that the FCRA does not grant a right to injunctive relief to private plaintiffs, and preempts any state law inconsistent with the remedies in the FCRA, and,

---

[3] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

therefore, preempts states from granting private plaintiffs injunctive relief on actions the FCRA encompasses.  See Tr. at 41:10-21 (Court, Sheldon).

Trans Union asserted that the FCRA preempts Fishback's claim for treble damages under the UPA.  See Tr. at 37:2-6 (Sheldon).  Trans Union asserted that, under the FCRA, Congress has given the states permission to govern the CRA's behavior, but if any state law is inconsistent with what the FCRA mandates, the FCRA preempts the state law.  See Tr. at 41:17-21 (Sheldon). Trans Union further contended that the New Mexico statute allowing a claim for treble damages, § 57-12-10(B) of the UPA, is inconsistent with the FCRA, because the UPA goes beyond what the FCRA allows, and the FCRA therefore prohibits the UPA's treble damages remedy.  See Tr. at 42: 8-13 (Court, Sheldon).   Trans Union alleged that, because Congress included compensatory and punitive damages in the FCRA, under §§ 1681n and 1681o, any New Mexico statute allowing treble damages for the same cause of action is inconsistent with Congressional intent.  See Tr. at 43:1-7 (Sheldon).  Trans Union argued that the district court in Eller v. Trans Union, LLC specifically found that the FCRA preempts state law claims for treble damages.  See Tr. at 44:12-15 (Sheldon).  Regarding Fishback's contention that Hale v. Basin Motor Co. supports the proposition that under New Mexico law the multiplication of damages pursuant to statutory authority is a form of punitive damages, and thus allowed under the FCRA provision for punitive damages, Trans Union argued that Congress did not envision treble damages being allowed as punitive damages.  See Tr. at 48:15-24 (Sheldon).  Trans Union asserted that, because Congress specifically allowed claims for damages for a cause of action under the FCRA, any additional damages are inconsistent and that, therefore, the FCRA preempts each state claim. See Tr. at 48: 18-24 (Sheldon).  While Trans Union conceded that the UPA does not create a

claim for punitive damages, it contended that, regardless whether treble damages or punitive damages would be more generous to the plaintiff in a case, Congress was clear that punitive damages are allowed under the FCRA, and therefore, that treble damages are preempted.  See Tr. at 51:10-16, 52:4-19 (Court, Sheldon).

Fishback responded that the FCRA preemption clause in § 1681t(a) is very narrow and preempts only those state statutes that are inconsistent with the FCRA and then only to the extent of those inconsistencies.  See Tr. at 53:19-54:1 (Treinen).  Fishback argued that White v. First Am. Registry, Inc., 378 F. Supp. 2d 419 (S.D.N.Y. 2005), provides supports for his position that, when a state statute expressly permits injunctive relief for a private party, the FCRA does not preempt that state claim.  See Tr. at 54:12-25, 55:1-6 (Treinen).  Fishback contended that, where the federal statute does not expressly state whether a private party has the power to request injunctive relief, a state claim for injunctive relief is not inconsistent.  See Tr. at 55:7-11 (Treinen).  Fishback further argued that an affirmative grant in a state statute cannot be inconsistent with federal statutory silence.  See Tr. at 55:7-11 (Treinen).  Fishback distinguished from his case Stitch v. BAC Home Loans Serv., Clark v. Saxon Mortg. Co., Jarrett v. Bank of Am., and Poulson v. Trans Union, LLC, -- cases which Trans Union cited to support the argument that the FCRA preempts state common law and state statutes providing for injunctive relief.  See Tr. at 57:6-58:15 (Court, Treinen).  Fishback contended that in none of those cases was there a state statute that expressly granted private injunctive relief and, therefore, they did not address the issue here, where Fishback brings his request for injunctive relief is based on a state statute that expressly allows injunctive relief.  See Tr. at 58:1-15 (Treinen).

- 11 -

Fishback agreed with Trans Union that the analysis for preemption of his treble damages request is similar to the analysis for preemption of his request for injunctive relief.  <u>See</u> Tr. at 59 22-23 (Treinen).  Fishback contended that nothing in the FCRA has expressly forbidden treble damages; therefore, the question before the Court is whether, as a matter of law, treble damages can be considered inconsistent with punitive damages.  <u>See</u> Tr. at 60:2-4 (Treinen).  Fishback cited <u>Hale v. Basin Motor Co.</u> and argued that the Supreme Court of New Mexico has held that the multiplication of damages pursuant to statutory authority, specifically treble damages under the UPA, is a form of punitive damages.  <u>See</u> Tr. at 60:10-16 (Treinen).  Fishback also argued that both the punitive damages award clause in the FCRA and the treble damages award clause in the UPA are permitted with a showing of a willful violation.  <u>See</u> Tr. at 60:17-25 (Treinen).  Fishback argued that, because the statutes are so similar, they are not inconsistent.  <u>See</u> Tr. at 61:2-5 (Treinen).

Fishback also addressed the cases that Trans Union cited.  <u>See</u> Tr. at 61:16-17 (Treinen).  Fishback first addressed <u>Consumer Data Indus. Ass'n v. King</u>; Fishback contended that <u>Consumer Data Indus. Ass'n v. King</u> dealt with a state statute that conflicted with the FCRA such that the CRA could not comply with both, and, therefore, the United States Court of Appeals for the Tenth Circuit found that the FCRA preempted the state statute.  <u>See</u> Tr. at 61:17-63:4 (Treinen).  Fishback asserted that the Tenth Circuit did not consider the issue where the state law affirmatively provides for injunctive relief, or the issue of treble damages, because the issue before the court was a state law that could not be applied alongside the FCRA.  <u>See</u> Tr. at 62:5-9 (Treinen).  Fishback also addressed Trans Union's use of <u>Eller v. Trans Union, LLC</u>; Fishback argued that the district court's opinion was very cursory and could not be considered

controlling.  See Tr. at 62:10-14 (Treinen).  Fishback contended that the district court in <u>Eller v.</u> <u>Trans Union, LLC</u> based its decision on a faulty analysis of the FCRA damages clause and capped the actual damages allowed when the FCRA does not cap the actual damages.  See Tr. at 63:3-13 (Treinen).

Trans Union disputed Fishback's assertion that <u>Eller v. Trans Union, LLC</u> was cursory and cannot be considered controlling.  See Tr. at 65:4-9 (Sheldon).  Trans Union admitted that <u>Eller v. Trans Union, LLC</u> did not go into the analysis that the Court would like on the issue of treble damages, but Trans Union asserted, nonetheless, that the district court found that the FCRA preempts treble damages.  See Tr. at 66:2-9 (Sheldon).

Trans Union also responded to the case Fishback presented, <u>White v. First Am. Registry,</u> <u>Inc.</u>, in support of Fishback's contention that, when a state statute expressly permits injunctive relief for a private party, the FCRA does not preempt that state claim.  See Tr. at 66:14-15 (Sheldon).  Trans Union argued that the district court in <u>White v. First Am. Registry, Inc.</u> was ruling on a state statute that did not address injunctive relief, whereas, in this case, the UPA expressly grants injunctive relief to private plaintiffs.  See Tr. at 66:14-23 (Sheldon).  Trans Union asserts that this grant of injunctive relief is inconsistent with the FCRA, because the FCRA limits injunctive relief to the FTC.  See Tr. 66:23-67:1 (Sheldon).

## LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."  <u>Henry v. Office of Thrift Supervision</u>, 43 F.3d 507, 511 (10th Cir. 1994)(citations omitted).  A plaintiff generally bears the burden of demonstrating the court's

jurisdiction to hear his or her claims.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83,

104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its

existence.").  Rule 12(b)(1) allows a party to raise the defense of the court's "lack of jurisdiction

over the subject matter" by motion.  Fed. R. Civ. P.12(b)(1).  The Tenth Circuit has held that

motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a

facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or

(2) a challenge to the actual facts upon which subject-matter jurisdiction is based."  Ruiz v.

McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in
> opposing a rule 12(b)(6) motion: the court must consider the complaint's
> allegations to be true.  See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v.
> Tucker, 645 F.2d 404, 412 (5th Cir. 1981).  But when the attack is aimed at the
> jurisdictional facts themselves, a district court may not presume the truthfulness
> of those allegations.  A court has wide discretion to allow affidavits, other
> documents, and a limited evidentiary hearing to resolve disputed jurisdictional
> facts under Rule 12(b)(1).  In such instances, a court's reference to evidence
> outside the pleadings does not convert the motion to a Rule 56 [summary-
> judgment] motion.

Hill v. Vanderbilt Capital Advisors, LLC, No. CIV 10-0133, 2011 WL 6013025, at *8 (D.N.M.

Sept. 30, 2011)(Browning, J.).  As the United States Court of Appeals for the Fifth Circuit has

stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P.
> 56.  Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction --
> its very power to hear the case -- there is substantial authority that the trial court is
> free to weigh the evidence and satisfy itself as to the existence of its power to hear
> the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations,
> and the existence of disputed material facts will not preclude the trial court from
> evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortensen v. First Fed.

Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

- 14 -

When making a rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court.  See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment.  See Holt v. United States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).  Where, however, the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56.  See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippet v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997).  "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'"  Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)).

## LAW REGARDING RULE 12(b)(6)

The court may dismiss a complaint for "failure to state a claim upon which relief can be granted" under rule 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the

light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.")(quoting Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir.2006)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citation omitted).

A complaint sufficiently states a claim for relief where the plaintiff pleads sufficient facts that, if assumed to be true, state a facially plausible claim.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010)("To determine whether a motion to dismiss was properly granted, we apply a plausibility standard to ascertain whether the complaint includes enough facts that, if assumed to be true, state a claim to relief that is plausible on its face.").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

- 16 -

alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "Thus, the mere metaphysical possibility that some

plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the

complainant must give the court reason to believe that this plaintiff has a reasonable likelihood

of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d

1174, 1177 (10th Cir. 2007)(emphasis omitted). The Tenth Circuit explains:

> "[P]lausibility" in this context must refer to the scope of the allegations in a
> complaint: if they are so general that they encompass a wide swath of conduct,
> much of it innocent, then the plaintiffs "have not nudged their claims across the
> line from conceivable to plausible." The allegations must be enough that, if
> assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for
> relief.

Robbins v. Okla., 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly,

550 U.S. at 570)(internal citations omitted). The plausibility requirement serves to "weed out

claims that do not (in the absence of additional allegations) have a reasonable prospect of

success" as well as "inform the defendants of the actual grounds of the claim against them."

Robbins v. Okla., 519 F.3d at 1248.

## LAW REGARDING PREEMPTION

Article VI, clause 2, of the Constitution provides that the laws of the United States "shall

be the Supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the

Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Consistent with the Supremacy Clause,

the Supreme Court of the United States has "long recognized that state laws that conflict with

federal law are 'without effect.'" Altria Grp., Inc. v. Good, 555 U.S. 70, 75 (2008)(quoting

Maryland v. Louisiana., 451 U.S. 725, 746 (1981)). The Supreme Court has summarized the

situations in which preemption is likely to be found:

> Pre-emption may be either expressed or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.  Absent explicit pre-emptive language, we have recognized at least two types of implied pre-emption: field pre-emption, where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, and conflict pre-emption, where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

Gade v. Nat'l Solid Wastes Mgmt. Assoc., 505 U.S. 88, 98 (1992) (citations omitted).

Preemption may be express or implied.  See Gade v. Nat'l Solid Wastes Mgmt. Assoc., 505 U.S. at 98.  When faced with express preemption -- where a statute expressly states that it preempts certain areas of state law -- a court must determine the scope of the preemption that Congress intended.  See Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)(stating that "the purpose of Congress is the ultimate touch-stone in every pre-emption case").  "Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose."  Altria Grp., Inc. v. Good, 555 U.S. at 77.  When the text of a preemption clause is susceptible to more than one plausible reading, courts ordinarily "accept the reading that disfavors pre-emption."  Bates v. Dow Agrosciences, LLC, 544 U.S. 431, 449 (2005).  Preemption arguments are analyzed under rule 12(b)(1).[4]  See Cedars-Sinai Med. Center v. Nat'l League of Postmasters of U.S., 497 F.3d 972, 975 (9th Cir. 2007)(applying rule 12(b)(1) when reviewing motion to dismiss asserting preemption defense).

Addressing express preemption requires a court to determine the scope of the preemption.  That task entails scrutinizing the preempting words in light of two presumptions.  First,

---

[4] Trans Union filed the Motion to Dismiss pursuant to rule 12(b)(6); however, preemption arguments are analyzed under rule 12(b)(1).  See Cedars-Sinai Med. Center v. Nat'l League of Postmasters of U.S., 497 F.3d at 975.

> [i]n all pre-emption cases, and particularly in those in which Congress has legislated . . . in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

Medtronic, Inc. v. Lohr, 518 U.S. at 485 (citations omitted)(internal quotation marks omitted).

Second, "[t]he purpose of Congress is the ultimate touchstone in every pre-emption case."

Medtronic, Inc. v. Lohr, 518 U.S. at 485 (citations omitted)(internal quotation marks omitted).

> Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and the statutory framework surrounding it. Also relevant, however, is the structure and purpose of the statute as a whole, as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law.

Medtronic, Inc. v. Lohr, 518 U.S. at 486 (citations omitted)(internal quotation marks omitted).

In one of its most recent express preemption decisions,[5] Bruesewitz v. Wyeth, LLC, 131 S.Ct. 1068 (2011), the Supreme Court concluded that the National Childhood Vaccine Injury Act, 42 U.S.C.A. §§ 300aa–11(c)(1), 300aa–13(a)(1)(A), preempted all design-defect claims that the plaintiffs seeking compensation brought against vaccine manufacturers for injury or death that certain vaccine side effects caused. See 131 S.Ct. 1075-1080. The Supreme Court noted that Congress passed this act to "stabilize the vaccine market and facilitate compensation." Bruesewitz v. Wyeth, LLC, 131 S.Ct. at 1073. The Supreme Court pointed out that this federal

---

[5] The Supreme Court addressed express preemption in Dan's City Used Cars, Inc. v. Pelkey, 133 S.Ct. 1769 (2013), not conflict preemption, "to identify the domain expressly pre-empted" by the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501(c)(1). See 133 S.Ct. at 1775 (holding unanimously "that state-law claims stemming from the storage and disposal of a car, once towing has ended, are not sufficiently connected to a motor carrier's service with respect to the transportation of property to warrant preemption.")(emphasis in original).

statutory scheme provided for "[f]ast, informal adjudication," allowing "[c]laimants who show that a listed injury first manifested itself at the appropriate time are prima facie entitled to compensation."  Bruesewitz v. Wyeth, LLC, 131 S.Ct. at 1073.  Additionally,

> [a] claimant may also recover for unlisted side effects, and for listed side effects that occur at times other than those specified in the Table, but for those the claimant must prove causation.  Unlike in tort suits, claimants under the Act are not required to show that the administered vaccine was defectively manufactured, labeled, or designed.

Bruesewitz v. Wyeth, LLC, 131 S.Ct. at 1074 (footnote omitted).  The Supreme Court also noted that the statutory scheme had relatively favorable remedy provisions.  See 131 S.Ct. at 1074.  "The quid pro quo for this, designed to stabilize the vaccine market, was the provision of significant tort-liability protections for vaccine manufacturers," such as limiting the availability of punitive damages and expressly eliminating liability for a vaccine's unavoidable, adverse side effects.  131 S.Ct. at 1074.  The statutory text at issue in Bruesewitz v. Wyeth, LLC was as follows:

> No vaccine manufacturer shall be liable in a civil action for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, if the injury or death resulted from side effects that were unavoidable even though the vaccine was properly prepared and was accompanied by proper directions and warnings.

131 S.Ct. at 1075 (quoting 42 U.S.C. § 300aa-22(b)(1)).  The Supreme Court emphasized the use of the word "unavoidable" in reaching its conclusion that the statute preempted design defect claims resulting from unavoidable side effects.  131 S.Ct. at 1075-77.  The Supreme Court also found it persuasive that the statutory text directly mentioned other aspects of product liability law.  See 131 S.Ct. at 1076.

Implied conflict preemption is found when it is impossible for a private party to comply with both state and federal requirements, see English v. General Elec. Co., 496 U.S. 72, 78-79 (1990), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Hines v. Davidowitz, 312 U.S. 52, 67 (1941).  "Pre-emptive intent may also be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law."  Hines v. Davidowitz, 312 U.S. at 67 (citing Freightliner Corp. v. Myrick, 514 U.S. 280, 287 (1995)).

The Supreme Court, in the past, found that implied preemption may take the form of "obstacle" preemption.[6]  Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 373 (2000) (holding that preemption is appropriate where the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"); Pharm. Research and Mfrs. of Am. v. Walsh, 538 U.S. 644, 679 (2003)(Thomas, J., concurring)("Obstacle pre-emption turns on whether the goals of the federal statute are frustrated by the effect of the state law.").  The Supreme Court instructed that, in obstacle preemption cases, "there is no federal pre-emption in vacuo, without a constitutional text or a federal statute to assert it."  P.R. Dep't of Consumer Affairs v. Isla Petroleum Corp., 485 U.S. 495, 503 (1988). See Gade v. Nat'l Solid Wastes Mgmt. Assoc., 505 U.S. at 98.  A reviewing court must still "examine the explicit statutory language and the structure and purpose of the statute."  Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990).  In 2000, the Supreme Court decided Geier

---

[6] "Obstacle" preemption has also been referred to as the "doctrine of frustration-of-purposes."  Geier v. Am. Honda Motor Co., 529 U.S. 861, 908 n.22 (2000)(Stevens, J., dissenting).

v. Am. Honda Motor Co., 529 U.S. 861 (2000), which held, by a five-to-four vote, that a federal

regulation which permitted, but did not require, airbags to be installed in passenger vehicles

preempted claims that a car was defective because it lacked an airbag.  See 529 U.S. at 874.  The

majority found: "The rule of state tort law for which petitioners argue would stand as an

'obstacle' to the accomplishment of [the federal regulation's] objective.  And the statute foresees

the application of ordinary principles of pre-emption in cases of actual conflict.  Hence, the tort

action is pre-empted."  529 U.S. at 886.  Justice Stevens, in his dissenting opinion, expressed a

desire to eliminate obstacle preemption.  He argued that the presumption against preemption

> serves as a limiting principle that prevents federal judges from running amok with
> our potentially boundless (and perhaps inadequately considered) doctrine of
> implied conflict pre-emption based on frustration of purposes -- i.e., that state law
> is pre-empted if it stands as an obstacle to the accomplishment and execution of
> the full purposes and objectives of Congress.

Geier v. Am. Honda Motor Co., 529 U.S. at 907-08 (Stevens, J., dissenting).

The Supreme Court has now begun to back away from finding implied preemption based

on an alleged conflict with the purposes underlying federal regulations.  In 2003, the Supreme

Court issued a unanimous decision in Sprietsma v. Mercury Marine, 537 U.S. 51 (2003),

rejecting implied conflict preemption of state law claims that a boat engine was defective

because it lacked a propeller guard.  In 2008, in Altria Group. Inc. v. Good, the Supreme Court

rejected the plaintiffs' obstacle-preemption claim that the Federal Cigarette Labeling and

Advertising Act, 15 U.S.C. §§ 1331-41, preempted a similar state act, Maine's Unfair Practices

Act, Me. Rev. Stat. Ann., Tit. 5, § 207 (2008), because it presented an obstacle to the Federal

Trade Commission's longstanding policy of encouraging consumers to rely on representations of

tar and nicotine content based on an approved methodology.  See 555 U.S. at 90.  In 2009, in

Wyeth v. Levine, 129 S.Ct. 1187 (2009), six Justices of the Supreme Court, including Justices

Breyer and Kennedy, who joined in the majority decision in Geier v. Am. Honda Motor Co.,

rejected the plaintiff's two implied preemption arguments -- impossibility preemption and

obstacle preemption.  See Wyeth v. Levine, 129 S.Ct. at 1203 (holding that "it is not impossible

for Wyeth to comply with its state and federal law obligations and that Levine's common-law

claims do not stand as an obstacle to the accomplishment of Congress' purposes in the [Federal

Food, Drug, and Cosmetic Act, 21 U.S.C.A. §§ 301, 321, 331-337, 341-350, 361-364, and 381-

399; 21 C.F.R. § 201.80(e)]").  In so ruling, Justice Stevens, writing for the majority, narrowly

limited Geier v. Am. Honda Motor Co. to its facts, finding that the decision in that case was

based on the "complex and extensive" history of the substantive regulation at issue.  129 S.Ct. at

1201.  The Supreme Court rejected obstacle preemption, stating: "If Congress thought state-law

suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption

provision at some point during the FDCA's 70-year history."  129 S.Ct. at 1200.  Justice Stevens

quoted Justice O'Connor's explanation in Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489

U.S. 141 (1989): "The case for federal pre-emption is particularly weak where Congress has

indicated its awareness of the operation of state law in a field of federal interest, and has

nonetheless decided to stand by both concepts and to tolerate whatever tension there is between

them."  Wyeth v. Levine, 129 S.Ct. at 1200 (quoting Bonito Boats, Inc. v. Thunder Craft Boats,

Inc., 489 U.S. at 166-67).

 Of particular import for the current status of implied obstacle preemption is Justice

Thomas' concurring opinion in Wyeth v. Levine, in which he wrote:

> I write separately, however, because I cannot join the majority's implicit
> endorsement of far-reaching implied pre-emption doctrines.  In particular, I have

> become increasingly skeptical of this Court's "purposes and objectives" pre-emption jurisprudence.  Under this approach, the Court routinely invalidates state laws based on perceived conflicts with broad federal policy objectives, legislative history, or generalized notions of congressional purposes that are not embodied within the text of federal law.  Because implied pre-emption doctrines that wander far from the statutory text are inconsistent with the Constitution, I concur only in the judgment.

129 S.Ct. at 1205 (Thomas, J., concurring in the judgment).   Justice Thomas stressed his concern:

> Under the vague and potentially boundless doctrine of purposes and objectives pre-emption . . . the Court has pre-empted state law based on its interpretation of broad federal policy objectives, legislative history, or generalized notions of congressional purposes that are not contained within the text of federal law . . . Congressional and agency musings, however, do not satisfy the Art. I, § 7 requirements for enactment of federal law and, therefore, do not pre-empt state law under the Supremacy Clause.

129 S.Ct. at 1207.  Justice Thomas emphasized that, when analyzing the preemptive effect of federal statutes or regulations, "[e]vidence of pre-emptive purpose must be sought in the text and structure of the provision at issue" to comply with the Constitution.  129 S.Ct. at 1207-08 (citing CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993)).  Justice Thomas, writing for the five-to-four majority in PLIVA, Inc. v. Mensing, 131 S.Ct. 2527 (2011), recently concluded, however, that conflict preemption required the preemption of inconsistent state laws on generic drug labeling that conflicted with the respective federal law, because it was impossible to comply with both.  See 131 S.Ct. at 2577-78.  The Supreme Court sought to reconcile Wyeth v. Levine, however, recognizing that the respective statutory schemes in each case was distinguishable.  See PLIVA, Inc. v. Mensing, 131 S.Ct. at 2581-82 ("It is beyond dispute that the federal statutes and regulations that apply to brand-name drug manufacturers are meaningfully different than those that apply to generic drug manufacturers.").

- 24 -

Moreover, the Supreme Court has put renewed emphasis on the presumption against preemption.  See Wyeth v. Levine, 129 S.Ct. at 1195 n.3.  "In areas of traditional state regulation, [the Supreme Court] assume[s] that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest." Bates v. Dow Agrosciences, LLC, 544 U.S. 431, 449 (2005)(internal quotation marks omitted).  If confronted with two plausible interpretations of a statute, the court has "a duty to accept the reading that disfavors pre-emption." Bates v. Dow Agrosciences, LLC, 544 U.S. at 449.  See Wyeth v. Levine, 129 S.Ct. at 1195: Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 518 (1992)(plurality opinion).

In Arizona v. United States, 132 S.Ct. 2492 (2012), the Supreme Court once again emphasized the importance of clear Congressional intent when applying obstacle preemption. The Supreme Court struck down provisions of an Arizona immigration law that would penalize aliens who sought, or engaged in, unauthorized employment, because it "would interfere with the careful balance struck by Congress with respect to unauthorized employment of aliens." 132 S.Ct. at 2505.  With Justice Kagan taking no part in the consideration or decision of the case, writing for a five-to-three majority, which included Chief Justice Roberts and Justices Ginsburg, Breyer, and Sotomayor, Justice Kennedy wrote:  "The correct instruction to draw from the text, structure, and history of [the Immigration Reform and Control Act of 1986, 8 U.S.C. §§ 1101] is that Congress decided it would be inappropriate to impose criminal penalties on aliens who seek or engage in unauthorized employment." 132 S.Ct. at 2505.  The Supreme Court ruled that Congressional intent was clear; Congress had considered and rejected penalizing aliens who sought unauthorized employment.  See 132 S.Ct. at 2504.  Federal immigration law therefore preempted the Arizona law that would have penalized aliens seeking unauthorized employment,

because it would have created a penalty that Congress had clearly and intentionally left out.  See 132 S.Ct. at 2505.

The Tenth Circuit has recognized federal preemption of state law in three categories: (i) when a federal statute expressly preempts state law ("express preemption"); (ii) where Congress intends to occupy a field ("field preemption"); and (iii) to the extent that a state law conflicts with a federal law ("conflict preemption").  See Colo. Dept. of Pub. Health and Env't., Hazardous Materials and Waste Mgmt. Div. v. United States, 693 F.3d 1214, 1222 (10th Cir. 2012).  As the defendant in Colo. Dept. of Pub. Health and Env't., Hazardous Materials and Waste Mgmt. Div. v. United States, the United States invoked only conflict preemption to dismiss Colorado's claims against it; the Tenth Circuit therefore did not address field preemption in this area.  See 693 F.3d at 1222.  "To avoid conflict preemption, 'it is not enough to say that the ultimate goal of both federal and state law is the same.  A state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach this goal." Chamber of Commerce v. Edmondson, 594 F.3d 742, 769 (10th Cir. 2010)(quoting Int'l Paper Co. v. Ouellette, 479 U.S. 481, 494, (1987)(alterations, citation omitted)).  In Colo. Dept. of Pub. Health and Env't., Hazardous Materials and Waste Mgmt. Div. v. United States, the state of Colorado created a schedule for the United States to follow in the destruction of hazardous waste stored in the state, in an attempt to prohibit the storage of hazardous waste within the state.  See 693 F.3d at 1223.  The Tenth Circuit held that the state statute creating this schedule was in conflict with a statute Congress passed, mandating a deadline for the destruction of the materials. See 693 F.3d at 1224.  The Tenth Circuit reasoned that allowing Colorado to set a deadline for the destruction of the materials would impede the flexibility Congress had intended in its

- 26 -

deadline.  See 693 F.3d at 1224.  Because the Colorado deadline would interfere with the that method Congress had intended for the disposal of the waste, the Tenth Circuit found that the state law was in conflict with the federal law, and therefore, that the federal law preempted Colorado's schedule.  See 693 F.3d at 1224.

Congressional intent for the FCRA is clear: the FCRA does not preempt the field of credit reporting law.  See Credit Data of Ariz., Inc. v. State of Ariz., 602 F.2d 195 (9th Cir. 1979)(holding that Congress did not intend to preempt the field of credit reporting law with the FCRA).

> Section 1681t of the Federal Act provides that the Act does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State . . . . except to the extent that those laws are inconsistent with any provision of this subchapter and then only to the extent of the inconsistency.  Thus [§] 1681t refutes appellant's argument that in enacting the Fair Credit Reporting Act Congress intended to preempt the field

Credit Data of Ariz., Inc. v. State of Ariz., 602 F.2d at 197 (internal quotation marks omitted). Trans Union concedes that it cannot rely on field preemption.  See Tr. at 44:2-8 (Sheldon).

## RELEVANT LAW REGARDING THE FAIR CREDIT REPORTING ACT

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007).  The FCRA addresses the chief Congressional concerns, including the accuracy of consumer reports and problems associated with resolving disputed information. S. Rep. No. 91-517 at 1 (1969).  In enacting the FCRA, Congress "creat[ed] a system intended to give consumers a means to dispute -- and, ultimately, correct -- inaccurate information on their credit reports."  Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 431 (4th Cir. 2004).  The purpose of the FCRA is "to prevent consumers from being unjustly damaged because of

inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 at 1 (1969). One problem Congress intended to address through the FCRA was the difficulty with which private individuals are faced in correcting inaccurate information. See S. Rep. No. 91-517 at 3 (1969). Congress noted that "some [CRAs] proceed on the assumption that an individual is guilty until proven innocent," unjustly harming individuals who have done nothing wrong. S. Rep. No. 91-517 at 3.

The Senate Report on the FCRA stated that, while the FCRA would preempt inconsistent state laws, "no State law would be preempted unless compliance would involve a violation of Federal law." S. Rep. No. 91-517 at 8 (1969). Congress empowered the FTC to enforce the FCRA. See 15 U.S.C. § 1681s(a)(1). The United States Court of Appeals for the Ninth Circuit noted that the FTC, charged with enforcing the FCRA, has interpreted the FCRA to preempt state law "only when compliance with inconsistent state law would result in a violation of the FCRA." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1173 n.5 (9th Cir. 2009).

## 1.    The FCRA Creates a Private Right of Action Against CRAs That Willfully or Negligently Fail to Comply With the FCRA.

The FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681b. After a consumer notifies a CRA of a dispute regarding completeness or accuracy of information, the agency is required to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, and record the current status of the disputed information or delete the item from the file. See 15 U.S.C. § 1681i(a)(1)(A).

> If the disputed information is inaccurate or incomplete, or cannot be verified, the consumer reporting agency must (1) promptly delete or modify that item based on the results of the reinvestigation; and (2) promptly notify the furnisher of that information that the information has been modified or deleted from the consumer's file. 15 U.S.C. § 1681i(a)(5).

Jarrett v. Bank of Am., 421 F. Supp. 2d at 1353.  Sections 1681n and 1681o of Title 15 of the United States Code provide a private right of action against CRAs that willfully or negligently fail to comply with the FCRA, absent explicit exception.  A CRA is liable to a private plaintiff for actual damages and attorney's fees and, upon proof of a willful violation, statutory and punitive damages.  See 15 U.S.C. §§ 1681n & 1681o.  The FCRA gives an affirmative grant of the power to seek injunctive relief to the FTC and makes no mention of injunctive relief for private plaintiffs. This grant of power to the FTC demonstrates that Congress granted the power to obtain injunctive relief under the FCRA solely to the FTC.  See Washington v. CSC Credit Servs., Inc., 199 F.3d at 268 (holding that the FCRA's affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants, demonstrates that Congress vested the power to obtain injunctive relief solely in the FTC).

### 2.   Congress did not Intend to Preempt the Field of Credit Reporting Law Through the FCRA.

The FCRA does not annul or exempt any state laws, "except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency."  15 U.S.C. § 1681t(a).  The Circuit Courts of Appeals for the United States have easily dismissed the notion that the FCRA preempts the field of credit reporting law in light of such clear Congressional intent towards conflict preemption.  See Credit Data of Ariz., Inc. v. State of Ariz., 602 F.2d at 197 (holding that Congress did not intend to preempt the field),

Davenport v. Farmers Ins. Grp., 378 F.3d 839 (8th Cir. 2004)(holding that the FCRA makes clear that it is not intended to preempt the field).

In § 1681t(b), the FCRA expressly states that no requirement or prohibition can be imposed under the laws of any state with respect to certain specified subject matter.  See 15 U.S.C. § 1681t(b).  The FCRA preempts state law concerning any subject matter regulated under these specific sections.  See 15 U.S.C. § 1681t(b).  These specific subject matters include the subjects of §§ 1681b(c, e), 1681c, 1681c-1, 2, 1681g(a(1)(A), c-g), 1681i, 1681j(a), 1681m(a, b, d-h), 1681s(f), 1681s-2, 1681s-3, and 1681w.  See 15 U.S.C. § 1681t(b).  Section 1681t(b)(1)(F) provides that any state law on a subject matter that § 1681s-2 governs, relating to the responsibilities of persons who furnish information to consumer reporting agencies, is preempted.  The FCRA expressly excludes from § 1681t's preemption section 54A(a) of chapter 93 of the Massachusetts Annotated Laws and section 1785.25(a) of the California Civil Code.  See 15 U.S.C. § 1681t(b)(1)(F).  The FCRA's damages sections, §§ 1681n and 1681o, are not included in § 1681t(b).  See 15 U.S.C. § 1681t(b).  The FCRA does not expressly state that it preempts state damages provisions.  See 15 U.S.C. § 1681t.

### 3.    The FCRA Does Not Preempt State Law That Makes Available Injunctive Relief to Private Plaintiffs.

The Courts of Appeals for the United States have not addressed whether the FCRA preempts a private plaintiff's claim for injunctive relief brought under an affirmative grant of power from a state statute.  The Fifth Circuit in Washington v. CSC Credit Servs., Inc., did not address whether a state law claim for injunctive relief would be inconsistent with the FCRA.  See 199 F.3d at 268 (addressing only claims brought under the FCRA).  The plaintiffs in Washington v. CSC Credit Servs., Inc. brought a class action against the CRAs only for alleged violations of

the FCRA; no state law claims were made. See 199 F.3d at 264. Other Circuit Courts of Appeals have also not addressed the issue. See Beaudry v. TeleCheck Servs., Inc., 579 F.3d 702, 709 (6th Cir. 2009)(remanding the case on other grounds, expressly choosing not to address whether a private plaintiff had a right to injunctive relief under the FCRA: "Should we address the district court's rejection of Beaudry's [argument] that, even if she does not have a damages action, [the] FCRA empowers her to bring an injunction action? We think not.").

The United States Court of Appeals for the Ninth Circuit has addressed whether the FCRA preempts a claim for a violation of a California statute that prohibits furnishing inaccurate information to a CRA. See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147. The plaintiff brought claims for violations of the FCRA and California Civil Code § 1785.25(a). See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d at 1169. The Ninth Circuit first addresses when the FCRA and the state law were inconsistent. Section 1681t(b)(1)(F) of the FCRA provides that no requirement or prohibition may be imposed under the laws of any state with respect to subject matter regulated under § 1681s-2 regarding the responsibilities of furnishers of information to CRAs. See 15 U.S.C. § 1681t(b)(1)(F). Congress expressly exempted § 1785.25(a) of the California Civil Code from this preemption. See 15 U.S.C. § 1681t(b)(1)(F). The district court held that the FCRA preempted the plaintiff's claim under § 1785.25(a) of the California Civil Code, because the private right to enforce § 1785.25(a) is in sections of the California Civil Code that the FCRA does not expressly exempt from preemption. See 584 F.3d at 1170. The district court held that, because the FCRA does not include a provision for private enforcement of § 1785.25(a), only state and federal officials are authorized to enforce the section. See 584 F.3d at 1170. The Ninth Circuit disagreed. See 584 F.3d at 1170.

- 31 -

> We do not find the district court's reasoning persuasive.  As an initial matter, the [district] court did not cite any provision of California law authorizing enforcement of section 1785.25(a) by state officials.  <u>Lin v. Universal Card Services Corp.</u>, 238 F. Supp. 2d 1147 (N.D. Cal. 2002), on which the district court relied, similarly fails to identify authorization for enforcement by state officials.  Such authorization may reside elsewhere in California law, but if it does, it almost surely lies in provisions also not specifically excluded by the FCRA preemption provision.  The district court's analysis would thus lead to the conclusion that Congress explicitly retained the portions of the California statutory scheme that create obligations, without leaving in place any enforcement mechanism. This would be an unlikely result at best.

584 F.3d at 1170.

The defendant raised on petition for rehearing en banc the argument that private enforcement of § 1785.25(a) was conflict preempted, because it was inconsistent with the FCRA's purposes.  <u>See</u> 584 F.3d at 1173 n.5.  The Ninth Circuit held that the argument was waived, because it was not raised before the panel, but stated that it would have rejected the argument anyway.  <u>See</u> 584 F.3d at 1173 n.5.  Citing to the available legislative history and administrative interpretations of the FCRA, the Ninth Circuit stated that "permitting private enforcement of state law obligations that are nearly identical to the FCRA's obligations would not require furnishers to violate the FCRA to comply with state law."  <u>Gorman v. Wolpoff & Abramson, LLP</u>, 584 F.3d at 1173 n.5 (citing 16 C.F.R. pt. 600 appx. § 622 ¶ 1, and S. Rep. No. 97–517, at 8 (1969)).

The United States District Court for the Northern District of California has found that a state law affirmatively granting a private plaintiff the power to seek injunctive relief is not inconsistent with the FCRA and, therefore, the FCRA does not preempt the state law.  <u>See Ramirez v. Trans Union, LLC</u>, 899 F. Supp. 2d 941, 947 (N.D. Cal. 2012).  The defendant in <u>Ramirez v. Trans Union, LLC</u> asserted that California state law remedies were inconsistent with

those the FCRA provides.  See 899 F. Supp. 2d at 947.  The district court held that, "[t]o the contrary, the Ninth Circuit's decision in Gorman v. Wolpoff & Abramson, LLP, suggests, if not compels, the conclusion that the additional remedy provision is not inconsistent with the FCRA." 899 F. Supp. 2d at 947.  The district court in Ramirez v. Trans Union, LLC found that "compliance with state law—the availability of an injunctive remedy to private litigants—would not result in a violation of a federal law. Thus, the availability of the remedy is not inconsistent with the FCRA."  899 F. Supp. 2d at 948.

In a different context, the United States District Court for the Southern District of New York has held that the FCRA does not preempt a state statute that neither proscribes nor prohibits private claims for injunctive relief.  See White v. First Am. Registry, Inc., 378 F. Supp. 2d 419. In White v. First Am. Registry, Inc., the plaintiff brought claims for injunctive relief under the FCRA and under the New York Fair Credit Reporting Act (N.Y. Gen. Bus. §§ 380-l, m)("NYFCRA").  See 378 F. Supp. 2d at 420.  The district court agreed with the Fifth Circuit decision in Washington v. CSC Credit Servs., Inc., that the absence of any express provision for injunctive relief for private plaintiffs, coupled with the express authorization for such relief on behalf of the FTC, leads to the conclusion that Congress did not intend to create a private right to seek injunctive relief under the FCRA.  See 378 F. Supp. 2d at 424.  The NYFCRA damages sections provide private plaintiffs with claims for monetary damages, including actual and punitive, but make no mention of injunctive relief.  See N.Y. Gen. Bus. §§ 380-l, m.  The defendant moved to dismiss the claim for injunctive relief under the NYFCRA on the grounds that the FCRA preempted it.  See 378 F. Supp. 2d at 424.  The district court held that the absence of a mention of injunctive relief in the NYFCRA did not preclude such a claim for private

plaintiffs.  <u>See</u> 378 F. Supp. 2d at 424.  The district court also held that the FCRA did not

preempt a claim for injunctive relief under the NYFCRA.  <u>See</u> 378 F. Supp. 2d at 425.

> In contrast to the FCRA, the NYFCRA lacks the type of highly detailed
> enforcement scheme that expressly provides for state authorities to seek injunctive
> relief. Any inference that arises from the affirmative grant of power to seek
> injunctive relief in the federal statute therefore does not arise here. Thus, while
> the NYFCRA expressly authorizes monetary damages, the absence of any
> mention of injunctive relief or an affirmative grant of power to seek injunctive
> relief does not necessarily and inescapably lead to the conclusion that the [New
> York] Legislature meant to preclude such relief for private plaintiffs.

378 F. Supp. 2d at 425.

## RELEVANT LAW REGARDING THE NEW MEXICO UNFAIR PRACTICES ACT

"The UPA provides individual and class action remedies for unfair, deceptive, or

unconscionable trade practices."  <u>Valdez v. Metro. Prop. & Cas. Ins. Co.</u>, No. 11-0507, 2012 WL

1132414, at *19 (D.N.M. Mar. 31, 2012)(Browning, J.)(citing <u>Quynh Truong v. Allstate Ins. Co.</u>,

147 N.M. 583, 590, 227 P.3d 73, 80 (2010)).  "Generally speaking, the UPA is designed to

provide a remedy against misleading identification and false or deceptive advertising."  <u>Lohman</u>

<u>v. Daimler-Chrysler Corp.</u>, 2007-NMCA-100, ¶ 22, 142 N.M. 437, 166 P.3d 1091(Ct. App.

2007).  To state a claim under the UPA, a complaint must allege:

> (1) the defendant made an oral or written statement, a visual description or a
> representation of any kind that was either false or misleading; (2) the false or
> misleading representation was knowingly made in connection with the sale, lease,
> rental, or loan of goods or services in the regular course of the defendant's
> business; and (3) the representation was of the type that may, tends to, or does
> deceive or mislead any person.

<u>Lohman v. Daimler-Chrysler Corp.</u>, 2007-NMCA-100, ¶ 22, 142 N.M. 437, 166 P.3d 1091

(citing N.M.S.A. 1978, § 57-12-2(D)); <u>Stevenson v. Louis Dreyfus Corp.</u>, 112 N.M. 97, 100, 811

P.2d 1308, 1311 (1991)).  "The gravamen of an unfair trade practice is a misleading, false, or

deceptive statement made knowingly in connection with the sale of goods or services." <u>Diversey Corp. v. Chem-Source Corp.</u>, 199-NMCA-112, ¶ 17, 125 N.M. 748, 965 P.2d 332, (Ct. App. 1998).

Under the UPA, "[a]ny person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a[n] . . . [unfair practice] . . . may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater."  NMSA 1978, § 57-12-10B.  The Supreme Court of New Mexico has discussed this provision and when it authorizes an award of statutory damages:

> The Unfair Trade Practices Act authorizes two types of private remedies:
>
> A person likely to be damaged by an unfair or deceptive trade practice or by an unconscionable trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits or intent to deceive or take unfair advantage of any person is not required.
> Any person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater. Where the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three times actual damages or three hundred dollars ($300), whichever is greater, to the party complaining of the practice.

NMSA 1978, § 57-12-10.  The first remedy under the statute, injunctive relief, expressly is not conditioned upon proof of monetary loss.  Any person likely to be damaged by an unfair or deceptive trade practice of another may obtain such relief; monetary loss is "not required." NMSA 1978, § 57-12-10(A).

If the trier of fact finds that the violation of the UPA was committed willfully, the court may award up to three times the actual damages to the injured party.  <u>See</u> NMSA 1978, § 57-12-

- 35 -

10(B).  The UPA does not mention claims for punitive damages.  See NMSA 1978, § 57-12-10.  The relief that the UPA provides is in addition to remedies otherwise available for the same conduct under the common law or other New Mexico statutes.  See NMSA 1978, § 57-12-10(D).

The Supreme Court of New Mexico has allowed awards of treble damages to be characterized as punitive damages.  See Hale v. Basin Motor Co., 110 N.M. at 320, 795 P.2d at 1012 (holding that the multiplication of damages pursuant to statutory authority is a form of punitive damages).  Treble damages under the UPA are "a form of punitive damages."  Two Old Hippies, LLC v. Catch the Bus, LLC, 807 F. Supp. 2d 1059, 1075 n.7 (D.N.M. 2011)(Browning, J.)(quoting Hale v. Basin Motor Co., 110 N.M. at 320, 795 P.2d at 1012)).  See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 749 F. Supp. 2d. 1235, 1247 n.5 (D.N.M. 2010)(Browning, J.)(noting that "the Court finds that treble damages are a form of punitive damages under New Mexico and Delaware law").

The Supreme Court of the United States has often characterized treble damages as punitive.  See Am. Soc. of Mech. Eng'rs, Inc. v. Hydrolevel Corp., 456 U.S. 556, 583 (1982)(Powell, J., dissenting).  Treble damages are primarily a punishment, and are intended to punish past and deter future unlawful conduct.  See Am. Soc. of Mech. Eng'rs, Inc. v. Hydrolevel Corp., 456 U.S. at 583.  Statutory awards of treble damages are not always strictly punitive, but can be characterized as such.  See PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 405 (2003)(Scalia, J., writing for the majority)(holding that physicians could be compelled to arbitrate Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1951-1960 ("RICO") claims, because although the arbitration agreement barred awards of punitive

damages, it was not clear whether the parties intended the word "punitive" to include claims for treble damages under RICO).

## ANALYSIS

Fishback has stated claims for injunctive relief and treble damages on which relief can be granted, neither of which the FCRA preempts. First, the FCRA grants the power to seek injunctive relief to the FTC, but remains silent on the issue whether private plaintiffs may seek injunctive relief. The FCRA only preempts state laws that are inconsistent with it and then only to the extent of those inconsistencies. Because compliance with the UPA would not violate the FCRA, the UPA is not inconsistent with the FCRA. The UPA, therefore, gives Fishback a claim for injunctive relief that the FCRA does not preempt. Second, the FCRA does not preempt Fishback's claim for treble damages. The FCRA allows a plaintiff to recover punitive damages for violations a CRA commits. Treble damages under the UPA are a form of punitive damages and, thus, the FCRA does not preempt them. Fishback has stated claims for relief; the Court, therefore, will not dismiss his claims.

**I.   FISHBACK DOES NOT HAVE A CLAIM FOR INJUNCTIVE RELIEF UNDER THE FCRA BUT HAS A CLAIM FOR PUNITIVE DAMAGES UNDER THE FCRA**

Fishback cannot assert a claim for injunctive relief under the FCRA. The FCRA gives an affirmative grant of the power to seek injunctive relief to the FTC and makes no mention of injunctive relief for private plaintiffs. This grant of power to the FTC demonstrates that Congress granted the power to obtain injunctive relief under the FCRA solely to the FTC. See Washington v. CSC Credit Servs., Inc., 199 F.3d at 268 (holding that the FCRA's affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private

litigants, demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC).  Fishback concedes that authority for his claim for injunctive relief is not within the FCRA damages clause, but, rather, asserts that he is entitled to injunctive relief under the UPA.  See Opposition at 8.

Fishback can bring a claim for punitive damages under the FCRA.  The FCRA provides a remedy for private plaintiffs.  See 15 U.S.C. §§ 1681n and 1681o.  "Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer" for actual and punitive damages and attorney's fees.  See 15 U.S.C. 1681n.  Trans Union does not dispute that Fishback has a claim for punitive damages under the FCRA.  See Motion to Dismiss at 4.

## II.   THE FCRA DOES NOT PREEMPT FISHBACK'S CLAIM FOR INJUNCTIVE RELIEF UNDER THE UPA.

Trans Union argues that Fishback cannot bring a claim for injunctive relief, because the FCRA grants injunctive relief only to the FTC.  Trans Union contends that the omission of any mention of injunctive relief for private plaintiffs indicates Congressional intent to allow only the FTC to achieve such relief.  Trans Union argues, therefore, that the FCRA preempts Fishback's claim for injunctive relief under the UPA.  Fishback argues that the FCRA does not preempt his claim for injunctive relief because he does not bring his claim under the FCRA.  Fishback argues that a private claim for injunctive relief under a state statute is not inconsistent with the FCRA.  Fishback asserts that, because the FCRA is silent regarding private claims for injunctive relief, a state statute granting such a claim is not inconsistent with the FCRA.

The Tenth Circuit has recognized three categories of federal preemption of state statutes: (i) express preemption; (ii) field preemption; and (iii) conflict preemption; see Colo. Dept. of

<u>Pub. Health and Env't., Hazardous Materials and Waste Mgmt. Div. v. U.S.</u>, 693 F.3d at 1222.

Trans Union argues for conflict preemption when it contends that Fishback's claims under the

UPA conflict with the FCRA.   <u>See</u> Motion to Dismiss at 3 ("[UPA] § 576-12-10 directly

conflicts with § 1681s(a) [of the FCRA] which grants equitable relief exclusively to the FTC.

[UPA] also conflicts with § 1681n and §1681o of the FCRA…").   Trans Union concedes that it

cannot rely on field preemption.   <u>See</u> Tr. at 44:2-8 (Sheldon).   Congressional intent for the

FCRA is clear: the FCRA does not preempt the field of credit reporting law.   <u>See</u> <u>Credit Data of</u>

<u>Ariz., Inc. v. State of Ariz.</u>, 602 F.2d 195 (holding that Congress did not intend to preempt the

field of credit reporting law with the FCRA).

> Section 1681t of the Federal Act provides that the Act does not annul, alter,
> affect, or exempt any person subject to the provisions of this subchapter from
> complying with the laws of any State . . . . except to the extent that those laws are
> inconsistent with any provision of this subchapter and then only to the extent of
> the inconsistency. Thus [§] 1681t refutes appellant's argument that in enacting the
> Fair Credit Reporting Act Congress intended to preempt the field

602 F.2d at 197 (internal quotation marks omitted).

The FCRA does not expressly preempt private plaintiffs from seeking injunctive relief.

The FCRA grants the FTC the power of injunctive relief.   <u>See</u> 15 U.S.C. § 1681s(a).   The FTC is

empowered to enforce the provisions of the FCRA in a section that does not mention a private

right of action, and neither affirms nor denies a private right to injunctive relief.   <u>See</u> 15 U.S.C.

§1681s(a)(1).   The clauses of the FCRA that create a right of action for private plaintiffs do not

mention injunctive relief.   <u>See</u> 15 U.S.C. §§ 1681n & 1681o.   FCRA § 1681t(b) expressly

preempts certain subjects in credit reporting law, but claims for relief are not included in that

group of subjects. <u>See</u> 15 U.S.C. §1681t(b).

Congress expressly limited what state law the FCRA would preempt, indicating that its intent was not to preempt the entire field. The preemption clause is narrow and expressly applies only to those state laws that are inconsistent with the FCRA, and then only to those inconsistencies. See 15 U.S.C. § 1681t(a). Trans Union agreed that Congress did not preempt the field of credit reporting agency law. See Tr. at 41:17-23. If the FCRA preempts the UPA, therefore, the provision for injunctive relief for private plaintiffs must conflict with the FCRA.

Fishback brings a claim for injunctive relief under the UPA, which expressly grants the power to seek injunctive relief to any person "likely to be damaged by an unfair or deceptive trade practice." NMSA § 57-12-10(A). The Tenth Circuit has not ruled on the issue before the Court, where a state statute affirmatively grants a private plaintiff the power to seek injunctive relief from a CRA. The Court did not find a United States Court of Appeals that had ruled on the exact issue. Trans Union brings to the Court's attention a case, where the Fifth Circuit ruled that the FCRA preempted a private claim for injunctive relief. See Washington v. CSC Credit Servs., Inc., 199 F.3d 263. That case is distinguishable because the plaintiffs only brought claims for injunctive relief under the FCRA and not under any state statute. See 199 F.3d at 264. The Fifth Circuit held that the FCRA does not grant private plaintiffs the power to seek injunctive relief, but did not comment on whether such a claim could be pursued under state law. See 199 F.3d at 268.

Other cases that Trans Union cites in support of the Motion to Dismiss are distinguishable because they involve claims made under state common law or state statutes that do not affirmatively grant private plaintiffs the power to seek injunctive relief. In Jarrett v. Bank of Am., a plaintiff brought suit against a bank and four CRAs for violations of the FCRA and

Kansas state law. See 421 F. Supp. 2d at 1353. Among the counts which she brought, the plaintiff argued that she was entitled to injunctive relief for violations of her privacy rights. See 421 F. Supp. 2d at 1353. She did not allege any state law claims for invasion of privacy or any other state law causes of action on which injunctive relief could be granted. See 421 F. Supp. 2d at 1354. The defendants filed motions to dismiss her claim for injunctive relief, and the district court granted the motions, because injunctive relief is not available for private parties under the FCRA, and the plaintiff had no state law claims for injunctive relief. See 421 F. Supp. 2d at 1354. In Stich v. BAC Home Loans Serv., LP, 2011 U.S. Dist. LEXIS 37408 *31-32 a plaintiff brought suit against BAC Home Loans Servicing, LP, for alleged inaccurate reporting to CRAs concerning loan payments. See 2011 U.S. Dist. LEXIS 37408 *1. The plaintiff asserted two claims for violations of the FCRA and three claims, including one for injunctive relief, under Colorado common law. See 2011 U.S. Dist. LEXIS 37408 *7. The district court held that "[t]o the extent that Mr. Stich seeks injunctive relief under state common law, such claim for relief fails because the FCRA preempts state laws to the extent that they are inconsistent with the federal statute." 2011 U.S. Dist. LEXIS 37408 *32 (internal quotation marks omitted). In Birmingham v. Equifax, Inc., the district court granted summary judgment on behalf of the defendants, in relevant part because the FCRA does not grant private parties claims for injunctive relief, and because the CRA had stopped reporting the disputed account anyway, rendering the issue moot. See 2009 U.S. Dist. LEXIS 5670 *4.

Fishback has alerted the Court to a case from the Southern District of New York where a state statute did not provide or prohibit private claims for injunctive relief, and the district court ruled, therefore, that a plaintiff was not barred from seeking injunctive relief under the New

York Fair Credit Reporting Act ("NYFCRA").  See Opposition at 8.  In White v. First Am. Registry, Inc., the plaintiff brought claims for injunctive relief under the FCRA and under the NYFCRA.  See White v. First Am. Registry, Inc., 378 F. Supp. 2d at 420.  The district court agreed with the Fifth Circuit decision in Washington v. CSC Credit Servs., Inc., that the absence of any express provision for injunctive relief for private plaintiffs, coupled with the express authorization for such relief on behalf of the FTC, leads to the conclusion that Congress did not intend to create a private right to injunctive relief under the FCRA.  See 378 F. Supp. 2d at 424.  The NYFCRA damages sections provide private plaintiffs with claims for monetary damages, including actual and punitive, but make no mention of injunctive relief.  See N.Y. Gen. Bus. §§ 380–l, m.  The defendant moved to dismiss the claim for injunctive relief under the NYFCRA on the grounds that the FCRA preempted it.  See 378 F. Supp. 2d at 424.  The district court held that the absence of a mention of injunctive relief in the NYFCRA did not preclude such a claim for private plaintiffs.  See 378 F. Supp. 2d at 425.  The district court also held that the FCRA did not preempt a claim for injunctive relief under the NYFCRA.  See 378 F. Supp. 2d at 425.  Fishback has a stronger claim for injunctive relief than the plaintiff in White v. First Am. Registry, Inc., because he is bringing his claim under an express grant of power from the UPA.

The Court has found only one district court opinion that dealt with a claim for injunctive relief under an affirmative state statute.  See Ramirez v. Trans Union, LLC, 899 F. Supp. 2d. 941.  The plaintiff brought a claim for injunctive relief under the FCRA and California Consumer Credit Reporting Agencies Act ("CCCRAA"), Cal. Civ. §§ 1785.10, 1785.14(b), 1785.15(f), and 1785.31.  See 899 F. Supp. 2d. 941.  The CCCRAA expressly creates a claim for injunctive relief for private plaintiffs.  See Cal. Civ. § 1785.31b.  The district court held in

Ramirez v. Trans Union, LLC that state laws creating additional remedies were not inconsistent with the FCRA and, thus, that the FCRA does not preempt the state law.  See 899 F. Supp. 2d. at 947.  That case and its reasoning, which applies case law from the Ninth Circuit, are instructive.  The Ninth Circuit has noted in Gorman v. Wolpoff & Abramson, LLP that the FTC itself had interpreted the FCRA to preempt state law "only when compliance with inconsistent state law would result in a violation of the FCRA."  16 C.F.R. pt. 600 appx. § 622 ¶ 1.  The Ninth Circuit also stated that complying with state law and "permitting private enforcement of state law obligations that are nearly identical to the FCRA's obligations" would not violate the FCRA.  Gorman v. Wolpoff & Abramson, LLP, 584 F.3d at 1173 n.5.

The district court in White v. First Am. Registry, Inc. allowed a plaintiff to bring a claim for injunctive relief under a state statute that did not mention private injunctive relief.  The district court did not find that the FCRA preempted a state law claim for injunctive relief.  Fishback brings a private claim for injunctive relief under the UPA, which affirmatively grants that power to private plaintiffs.  The FCRA thus does not preempt Fishback's claim for injunctive relief.  The district court in Ramirez v. Trans Union, LLC allowed a private claim for injunctive relief under a state statute that affirmatively granted the plaintiff that power.  The district court found that the FCRA did not preempt the state law claim for injunctive relief.  Fishback's claim is analogous to the claim brought in Ramirez v. Trans Union, LLC, because both are under affirmative grants of claims for injunctive relief under a state statute.

Conflict preemption is found when it is impossible for a private party to comply with both state and federal requirements, see English v. General Elec. Co., 496 U.S. at 78-79, or where state law "stands as an obstacle to the accomplishment and execution of the full purposes

and objectives of Congress," Hines v. Davidowitz, 312 U.S. at 67.  Allowing a private plaintiff to seek injunctive relief under an affirmative state law grant of that power would not violate any express federal statute.  While the FCRA does not create a private right to seek injunctive relief, it does not expressly bar such a claim.  There is no clear Congressional intent to preempt state law claims for private injunctive relief.  Indeed, the available information on Congressional intent for the FCRA indicates that such a claim would be permissible.  The Senate report on the FCRA indicates that it does not preempt state law, unless compliance with state law would result in a violation of federal law.  See S. Rep. No. 97–517, at 12 (1969).  A state law claim for injunctive relief, based on an affirmative grant of that power, would not result in a violation of the FCRA and would not impede Congressional objectives for the FCRA, an act intended to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report."  S. Rep. No. 91-517 at 1.  The Court may grant injunctive relief to Fishback without violating the FCRA, and, therefore, the FCRA does not preempt the UPA's provision of private injunctive relief.

## III.   FISHBACK HAS STATED A CLAIM FOR TREBLE DAMAGES THAT THE FCRA DOES NOT PREEMPT.

Fishback seeks an award of treble damages under the UPA, and the Court concludes that the FCRA does not preempt this claim for relief.  The UPA allows an award of treble damages if the Court finds that the party charged with an unfair or deceptive trade practice has willfully engaged in the unfair or deceptive practice.  See NMSA § 57-12-10(B)("Where the trier of fact finds that the party charged with an unfair or deceptive trade practice . . .  has willfully engaged in the trade practice, the court may award up to three times actual damages…").  Trans Union argues that an award of treble damages would be inconsistent with the FCRA and, thus, that the

FCRA preempts Fishback's claim for treble damages.  The FCRA provides that any CRA that willfully fails to comply with the provisions of the statute shall be liable to the consumer for "such amount of punitive damages as the Court will allow."  15 U.S.C. §§ 1681n(a)(1)(A) & 1681n(a)(2).  Treble damages under the UPA are "a form of punitive damages."  Two Old Hippies, LLC v. Catch the Bus, LLC, 807 F. Supp. 2d at 1075 n.7.  Both a claim for treble damages under the UPA and a claim for punitive damages under the FCRA are predicated on a finding of a willful violation of the respective statutes.  A claim for treble damages under the UPA is not inconsistent with the punitive damages provision of the FCRA, because the treble damages are considered punitive damages, which the FCRA expressly allows the Court to award.

Trans Union cites Eller v. Trans Union, LLC to support its argument that the FCRA grant of actual and punitive damages precludes any state created damages.[7]  In Eller v. Trans Union, LLC, the plaintiff brought a claim for treble damages under § 12-14.3-108 of the CCCRA.  See 2012 Dist. LEXIS 31629, at *2.  The United States District Court for the District of Colorado held that the FCRA grant of punitive damages preempts these state created damage claims.  See 2012 Dist. LEXIS 31629 *9.  The plaintiff did not raise, and the district court did not address, whether treble damages could be categorized as punitive damages and, thus, allowed under the FCRA.  See 2012 Dist. LEXIS 31629 *9.  While the Supreme Court of New Mexico has held in Hale v. Basin Motor Co. that treble damages are a form of punitive damages, the Supreme Court

---

[7] Fishback contended at the hearing that the district court in Eller v. Trans Union, LLC based its decision on a faulty assumption of what the FCRA damages clause said and capped the actual damages allowed, even though the FCRA does not cap the actual damages.  See Tr. at 63:3-13 (Treinen).  Any cap on actual damages allowed under the FCRA, however, is not at issue in this case.  Treble damages under the UPA are allowed as punitive, not actual, damages. See Hale v. Basin Motor Co., 110 N.M. at 320, 795 P.2d at 1012

of Colorado has carefully distinguished the two damages under Colorado law.  See Lexton-Ancira Real Estate Fund, 1972 v. Heller, 826 P.2d 819, 822 (1992)(holding that punitive damages and treble damages serve similar purposes but are distinct awards).  Under a Colorado state law claim, a plaintiff can recover either punitive damages or treble damages, but treble damages are not punitive damages.  See Lexton-Ancira Real Estate Fund, 1972 v. Heller, 826 P.2d at 822.  Fishback has argued that the treble damages under the UPA are punitive damages, and, thus, allowed under the FCRA damages provision.  See Opposition at 8.

The Court has previously recognized that the Supreme Court of the State of New Mexico allows the multiplication of damages pursuant to statutory authority as a form of punitive damages.  See Two Old Hippies, LLC v. Catch the Bus, LLC, 807 F. Supp. 2d at 1075 n.7 (citing Hale v. Basin Motor Co., 110 N.M. at 320, 795 P.2d at 1012); Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 749 F. Supp. 2d. at 1247 n.5.  The Supreme Court of the United States has "placed different statutory treble-damages provisions on different points along the spectrum between purely compensatory and strictly punitive awards," and acknowledged that treble damages can be characterized as punitive damages, because they are designed as a punishment.  PacifiCare Health Sys., Inc. v. Book, 538 U.S. at 405.

The FCRA provides private plaintiffs with a claim for punitive damages.  The Court has recognized treble damages under the UPA as punitive damages.  A claim for treble damages under the UPA, therefore, can be a claim for punitive damages.  A claim for punitive damages is not inconsistent with the FCRA, because the FCRA expressly allows punitive damages.  The UPA is therefore not in conflict with the FCRA, and the FCRA does not preempt the state claim

for treble damages.   Fishback has stated a claim for treble damages on which relief can be granted.

       **IT IS ORDERD** that the Defendant Trans Union, LLC's Motion to Dismiss, filed June 11, 2012 (Doc. 16), is denied.

                                    _____

                                    UNITED STATES DISTRICT JUDGE

*Counsel:*

Rob Treinen
Treinen Law Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Jennifer G. Anderson
Jeremy K. Harrison
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

      *Attorneys for Defendant HSBC Retail Services, Inc.,*
        *doing business as HSBC Furniture Row*

Patricia Williams
Wiggins, Williams & Wiggins
Albuquerque, New Mexico

--and--

Stephanie Cope
King & Spalding
Atlanta, Georgia

      *Attorneys for Defendant Equifax Information Services LLC*

Angela M. Taylor
Jones Day
Irvine, California

- 47 -

--and--

Charles J. Vigil
Rodey, Dickson, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendant Experian Information Solutions, Inc.*

Rodney L. Schlagel
Butt, Thornton & Baehr
Albuquerque, New Mexico

--and--

Amanda Loughmiller
Paul W. Sheldon
Strasburger & Price LLP
Frisco, Texas

    *Attorneys for Defendant Trans Union LLC*